Next case on our call this morning is agenda number 12. Case number 102-372, People of the State of Illinois, Appalee v. Joanne McKown, Appalachian. Good morning, your honors, Mr. Chief Justice, and may it please the court. My name is Don Ramsell. I represent Joanne McKown. I'll be conducting the main argument for Joanne McKown and my co-counsel, Ed Maloney, will be supplying the rebuttal. The basic question before your honors today is whether or not the police-administered HGN test is admissible in court to prove the conclusion that a person is alcohol impaired. The short answer is no. This was... Does that mean what we're about here is determining whether or not the trial court made an error under the Frey hearing? Well, frankly, the trial court after the remand has made certain rulings which we disagree with. To address those specifically, the trial court really never answered the question whether the test is admissible to prove the conclusion that a person is alcohol impaired. Rather, Judge Brandt specifically held that it's admissible for the possibility that a person consumed alcohol and that they might be under the influence, which is far below the dictate of this court, which was whether it, in fact, proves impairment. I'd suggest it was a compromise. The question that the court sent back was for a Frey hearing to determine whether it is scientific and whether it's generally accepted in the field of science and whether the methodology is accepted in that field? Yes. It was a very large question. I actually looked through the court's original decision here in McCown 1, if I may refer to it as such. And the charge that was sent back to the trial court for the purpose of the Frey hearing was not to determine its admissibility for the possibility of impairment, but its admissibility for the proof or conclusion of impairment. I simply bring that out because I believe that what the trial court's rulings were fell short of the charge for which it received. Now that's Wasn't the charge to conduct a Frey hearing? It did do so. But the question I thought that was put before the court there was to answer ultimately, after the Frey hearing, the question of whether it proves impairment, and what we received as an answer to summarize is that it proves the possibility of impairment, much like the smell of alcohol may, if you will. This is very important that we're answering the right question. If it was to get a Frey hearing, it was to determine whether or not the HGN process was generally accepted within the community in which it was used. Yes. And there were findings of fact by Judge Brandt on that issue as well. He did find that If the judge found general acceptance, would that conclude what the trial judge was given to do? In other words, conduct a Frey hearing to determine whether or not there was general acceptance? Yes. He did find that it was generally acceptable to prove the possibility of consumption of of alcohol. I emphasize that because Ms. McCown was convicted allegedly based on proof beyond a reasonable doubt. In the actual trial itself, the test was used not for the possibility of impairment, but for proof of actual impairment. On that issue, there was further evidence other than the evidence of the HGN test? There was evidence of a double zero, if you will, alcohol test, and there was no other field sobriety tests. There was very little evidence, and this court itself found that the HGN test did form a major portion or basis for the finding of guilty for its admission as proof of actual impairment. It was not introduced for the purpose of possible impairment or possible consumption of alcohol. Mr. Ramsello, you indicated the trial court here did say that the HGN testing satisfies the Frey standard in Illinois. Isn't it also true that most states that have addressed this issue, HGN, either under Frey or Dawbert have likewise found? Is that a fair statement? As a poll, I would agree with Your Honor. However, this is the most extensive and frankly the only hearing I would submit where both sides really were able to introduce the full plethora of evidence. Many of these other hearings were one-sided. Back to Chief Justice Fitzgerald's question on how important the question is. I think one of the things we're getting to, why wouldn't it relate to admissibility versus weight of the evidence? Whether or not this should be admissible, you can argue weight in any specific case. Well, Judge Brandt, to be candid, was wrong. That's what we feel. There are many reasons for that. First off, we go back to his finding, which was that he found that the test was admissible in the field of optometry and he resorts to a resolution that was performed or passed by voice vote or otherwise without debate or research at an American Optometric Association convention. He found that because this one optometrist took a course and uses a medical test of HGN, which Dr. Cytek himself admits is different than the police test, that that somehow translates into a police officer's use of a police technique. Dr. Cytek, the state's proponent, if you will, admits he's never actually even taken or passed the police course for their actual police-administered test. He admits that his medical test is different than the police test. That translation by Judge Brandt, I feel, is a bit disingenuous because they're apparently two different techniques. Dr. Citron, the board-certified ophthalmologist, he testified that he gives an HGN test which also is different than the police-administered test and that his test is only acceptable in a medical community to establish a possible central nervous depression or illness which could be up to 200 plus causes, only one of which is alcohol. So now we have in Judge Brandt's ruling the logic that because there's a medical HGN test that they use with all the training behind them as ophthalmologists or optometrists, that that test can translate into a variant employed by police to designate a cause as solely alcohol by officers who do not necessarily have college degrees, certainly are unlikely to have attended and successfully completed an optometry school, certainly are not doctors or ophthalmologists, and the bottom line is have attended at best a 24-hour course which according to the testimony, perhaps three hours is devoted to an HGN training and perhaps up to four questions on HGN are placed on a 20-question test about HGN. What is the NHTSA standard? Pardon? The NHTSA standards. Yes. What are those? The National Highway Traffic Safety Administration standardized HGN test is a very specific six or eight-part test which if completely and strictly complied with according to NHTSA, if I may refer to them as such, will allow for the possibility of proof of impairment. Now statistical research that's actually been performed on that has proven that a failure of that test correlates to a BAC or blood alcohol concentration level of approximately .04, half our legal limit. Four clues out of six translates to a .04, half our legal limit. Across the board, all the experts agree to that. Yet police officers and a .04 in Illinois law, .05 or less is presumed innocent of DUI, .08 being the legal limit. So the failure to perform that test by this officer is the basis for your saying that his testimony should be in it? Frankly, Justice, Officer Klatt is the poster boy for why the police administered tests should remain inadmissible. It's a systemic failure across the board, not only in the training of the officers, three hours, six hours, four questions, even if they get all of them wrong, if they get the other 16 questions right on the other field tests, they are considered certified and experts in HGN for the rest of their lives. The training system, which I don't think you can separate, is deficient. Isn't the state position that this argument has been forfeited? Yes, they did say so. However, if you return to the appellate decision where the decision that was presented to your honors before McCown won, it's specifically in that decision that the defendant raised not only the issue of Frye, but the issue of foundation for the admissibility of the test, even in the absence of Frye. So when it was appealed, the state, I believe, is erroneous in stating that this issue was never raised in the trial court or in the appellate court. I would point out that the defendant, that on page eight of the rule 23 opinion, which would also be referred to as A-19 of the original briefing argument for the defendant before this court, the appellate court indicates the defendant's third contention on appeal is that the trial court erred when it presented the question of whether the defendant had been able to do a HGN test. If we should find the officer's testimonies inadmissible at retrial, what about double jeopardy? Frankly, this was the only basis that the trial court in her findings relied upon to find that the defendant was in fact impaired. This is a case where the person was brought to the hospital, there were no field sobriety tests. It would be, I would say, a difficult leap to stretch so far as to say the remaining evidence proved impairment beyond a reasonable doubt. I believe that's something that certainly must be addressed. Equally true when we talk about... But the person was in a hospital bed and the officer himself testified that he did not form the opinion that the person was under the influence of alcohol until after he gave the HGN test and that he relied upon it in formulating that opinion. Whether that needs to be fleshed out or remanded, it's our position the remaining evidence was insufficient. But again, the case is on its facts. It's not about whether some obtuse HGN test in a hospital bed in a medical hospital, in an optometrist's office, or in ophthalmology passes the FRI standard. It's whether the test in this case that was performed is admissible under FRI. My original question, what you've done and done well is you've told us about the evidence that favored your side of the case. But the question here is, was the FRI test correct or incorrect? The FRI test and Judge Brandt's opinion was incorrect. There is more, it is not generally accepted. There might be some small individualized doctors that use it. In this case, the judge that heard the FRI hearing, I thought ruled that it was acceptable, the evidence was acceptable under FRI. It was acceptable for the limited purpose of the possibility of impairment. His basis for doing so... Is that the specific language that was used? Ultimately, yes. His conclusions, he gives a brief answer, yes, it's acceptable. But if you go to the last page of his opinion, he has great concerns about the value of the test. And therefore, on the final page of his ruling, he has great concerns about issues, if you will, the limitations for which he would indicate it can be used. Which is that a failed test may be limited to the conclusion that a failed test suggests the subject may have consumed alcohol and may be under the influence. There should be no attempt to correlate the test results with any particular blood substance. He also expresses... Back to the weight versus the admissibility. Isn't his overall conclusion really looking at all of them? He said it satisfies FRI. And then bottom line, in conjunction with other evidence, HDN may be used as part of the police officer's opinion that the subject is under the influence and impaired. That is his conclusion or that is one of the statements in his multi-paged ruling. And again, in light of Chief Justice Fitzgerald's question, what you're really talking about here is that if the evidence is admitted, why it should be of limited weight because of everything that you've indicated here. The jury is still allowed to consider it. You can go after it on cross-examination and then argue, you know, what weight really is related to this HDN test? Isn't that what we really are after this judge's ruling? No. And the reason why is because this is a scientific test, and as your honors indicated correctly in your original opinion, it's going to be given the aura of significant weight and the potential, because it's a scientific test, to mislead. It is basically speculation, guess, and conjecture. That's fine, but if that's your position, what you're really asking this court to do is look at the expert testimony and what have you that happened at that hearing and determine that HDN does not qualify under FRI. Well, that's correct, because the ultimate conclusion on FRI is reviewed de novo, and the trial court's conclusions are accorded no weight. The findings of fact are accorded weight, but frankly, this is not a finding of fact case. This is frankly just research. To follow up on Justice Thomas's question, though, you're also arguing that in this particular case, CLAT performed the test incorrectly, and therefore should not be admissible for that reason. Absolutely. So it's not just a matter of the HDN test to be admissible at all costs and move on to see whether it should be weighed more heavily or not. Well, I agree, because this is not simply a classroom discussion on the merits of the test, but ultimately boils down to whether Officer CLAT's performance qualifies to be admissible. Counsel, at what point did you raise that issue? At what point was that raised? The foundation for his, the admissibility of the test beyond FRI was raised before the appellate court, and it's in their opinion as such. Pardon? And the first time through. Yes, it was. And if the trial court had in fact performed the FRI hearing during the trial, as this court has basically ruled it should have, the evidence that we now have before us would have been before the trial court to exclude then Officer CLAT's test. If that trial court had done its job correctly, it would have heard what we now hear, that's the presumption, and it would have known, and the evidence of a lack of foundation would have been before them. But it's the state's obligation to prove it was done correctly. And frankly, the mere words that Officer CLAT said are an example of how problematic this HDN test is. He indicated he's done this test hundreds of times, yet every expert before the, in the FRI hearing said he did it wrong, and that there was no way you could render that test that Officer CLAT did was valid. That tells us hundreds of times he himself has apparently performed this test, misused it, perhaps misled various proponents of the test. That's how dangerous it is to put a tool, a scientific tool of this nature into the hands of police officers who are receiving training of three, six hours, who are not hardly tested on their knowledge of it. Their proficiency in actually moving the stylus and all of that are not tested at all in any pass or fail way, and they're never even recertified. I asked the court to look at the systemic issue before Your Honor. It's not necessarily whether an optometrist can do it, because clearly they can, and what they use it for. It's whether a police officer should be put in their hands. The court should not begin to judicially engraft, if you will. We'll let the police do it, but they need more training. They need more tests. You would almost have to create an entire system to get them up to par. I'm fearful that what would happen. Delaware has. They've essentially, I don't know if they judicially engrafted it or whether it was merely a fact that their officers go through substantially greater training. Texas, substantially greater training, recertifications, reinvestments. Maryland, I believe, requires not only an officer, but an additional expert to have to appear, such as an optometrist, to at least explain that there are other causes. Police officers are told, get on the stand, tell them four clues is a failure, it means somebody's impaired, even though we know in reality that's a .04. And they hide their heads in the sand when you try to ask them about the 47 to 241 other possible causes of nystagmus. They just say, I was only trained about alcohol. That's all I know. And I'm trained that that means they were impaired. Counsel, your time is up, but I do want to ask you a question. The answer is yes or no or I don't know. Is there any jurisdiction that limits the HGN test to probable cause? Yes. The Blake case from Arizona said that Fry does not apply to probable cause. So I believe that they limit it to that. But I know the Blake case specifically said that. It's quoted in your original McCown one opinion. A little bit beyond yes. Thank you. Good morning, Your Honors, and may it please the Court. I'm Assistant Attorney General Michael Blankenheim on behalf of the people. Just to answer your question, Justice Fitzgerald, the Arizona courts do not limit the use of HGN evidence to probable cause. In Arizona, the test is admissible. For the same purpose, we're seeking to have it admitted here on the substantive question of whether a person is under the influence of alcohol. The question presented in this case is both quite important and quite narrow. And as posed by this Court's opinion in McCown one, which you can find on page A59 of the defendant's appendix, is whether the HGN test is generally accepted as a reliable indicator of alcohol impairment. Courts across the country that have addressed that question following an evidentiary hearing are nearly unanimous in holding that the test is so accepted. The Circuit Court in this case put Illinois in line with the dominant view of that evidence after hearing substantial evidence that experts in the fields of optometry, ophthalmology, and general medical physicians who routinely screen their patients for signs of alcohol or drug-reduced impairment rely on that test to identify central nervous system impairment. Those experts who testified at the prior hearing in this case were also unanimous that a failed HGN test, when conducted by a properly trained officer, can indicate that the cause of those results is alcohol consumption. Did all the experts who testified in this case indicate that this officer did not properly perform the test? Ultimately, all the experts did reach that conclusion, but it's important to note that at least two of the experts who testified, Dr. Sytek and Sgt. LeBron, noted that the issue with class administration being improper was not so much that he administered some sort of rogue HGN protocol, but that he omitted in his description of the test certain phases of the protocol, namely the prescreening phases and an incorrect use of certain terminology. And that goes to prove the people's point that there was no contemporaneous objection in the trial court  that he now had defended, objected, and put into issue whether Officer Klatt's test was administered in accordance with the NHTSA protocols. He may have been able to testify that he did administer those tests. Was that issue raised on appeal, Mr. Blankenhorn? To be frank, Your Honor, I don't recall. I know it was not raised in the PLA before this court in the first appeal, but I cannot recall if it was specifically in the appellate court. The specifics did come out at the Frey hearing, though, right, upon remand? Yes. So when you talk about how this is a narrow question, and I'm sure Mr. Ramsell and Mr. Maloney are interested in whether the HGN meets the Frey test, but they're also interested in their client. Can this court look at this and indicate that we believe that under Frey standards HGN applies but a foundation was not met in this case with respect to Mr. McCown? In view of the defendant's forfeiture at both the trial court level and the PLA level, no, since those are independent grounds for finding that the claim is beyond the scope of this court's consideration. So would that mean that it would be subject to a remand? There would be a need for a remand only if this court determines that the HGN test is inadmissible. If the court were to reach that or so hold, then the case would need to be remanded for a new trial in light of the court's finding in McCown 1 that the introduction of the HGN test was harmful error in this case. Well, it would seem that it's important that if in McCown we retain jurisdiction of this. I know we sent it back for, you know, a specific finding under Frey, but we retain jurisdiction and that's why it seems particularly important when you start talking waiver about at the PLA level and the trial court level. Mr. Ramsell said the specific issue foundational with respect to this officer and this test and Mr. McCown was raised at the appellate court level, but you don't remember if it was or was not. I cannot recall. I apologize. Would you agree that if it was raised and we retained jurisdiction of this case, that that is another issue we should get to? No. In view of the failure to object to trial is an independent ground for having the claim forfeited. Okay. And you said it's not in the PLA either. That's correct. And I'd like to turn to the court's question regarding the use for which the HGN test will be offered in DUI prosecutions. The facts of both the trial, the defendant's original trial and the Frey hearing confirm that the people seek a reasonably limited use of the HGN test. At the Frey hearing, Master Sergeant LeBron, who is with the Illinois State Police, testified at pages 229 through 231 of the record that the HGN test is merely one tool among others to be used in a DUI investigation. And he trains his students at the Illinois State Police Academy not to opine on impairment solely based on the results of the HGN test. Mr. Blankenship, do you believe that the current training in Illinois is insufficient regarding the HGN? No. No. The people's position is that the training is adequate and was shown to be adequate through the testimony of Sergeant LeBron. Did he articulate any standards that have been used across the board in Illinois, not just the State Police, but other agencies? Yes, Your Honor. He indicated that all persons who are wishing to become police officers have to pass through a training academy that's certified by the Law Enforcement Training Board of Illinois. And he testified that that institution prescribes standardized curricula for field sobriety test training. And the curriculum that's prescribed for the HGN test by that institution is the NHTSA standard, which is at issue in this case. How much training is given to the officers? How much time is spent in training on the HGN test? I don't recall specifically. As Defense Counsel indicated, it's a 24-hour program on the battery of three tests. But I don't specifically recall the amount of hours for the HGN test. Do you think the standards in Illinois could be improved as Delaware and other states perhaps have done? Well, the Delaware case is considerably different than, or the purposes for which the HGN test was sought to be used in that case are considerably more expansive than the purposes for which the test is being used in Illinois. And this is on page 43 of the defendant's brief, the opening brief. The trial court in the Delaware case indicated that based on his review of the record presented at that, the dauber here in that case, the officers were insufficiently trained to identify whether other forms of, or other symptoms were causing the nystagmus. They were, police were insufficiently trained to testify regarding margins of error and to testify to statistical correlations between alcohol and. Were there training requirements developed in addition to what the court decided in that case? The court did indicate in that case that additional training would be appropriate, but only because of the additional purposes for which police officers were attempting to use the HGN test for. And again, to go back to this case, this case provides a good example of the reasonably limited use that the people seek to make of the HGN test. In this case, Deputy Klatt didn't opine that the defendant was impaired solely on the basis of the HGN test. He opined that based on all the information at my disposal, including the results of the HGN test, I thought that the defendant was under the influence. Counsel, what was the additional evidence other than the HGN test that could have been used on the issue of impairment? In this case, as Your Honor noted, there was a blood shot, glassy eyes, slurred speech, a witness at the scene of the crime, and also Deputy Klatt speaking with the defendant at the hospital smelled alcohol in her breath. There's the nature of the accident in this case, which is in clear conditions, there's indications at the scene that the defendant was speeding and for no reason suddenly slammed on her brakes and veered into the lane of oncoming traffic. There was a partially full can of beer found in the defendant's car. Additionally, she admitted to drinking three other cans of beer before the accident. So on that basis, if the court ultimately determines that a remand is necessary or a new trial is necessary, any rational fact finder or some rational fact finder could conclude that that evidence is sufficient to prove the under the influence element beyond a reasonable doubt. Counsel? Just to follow up on Justice Freeman, I want to ask you about Mr. Ramsell's comment. You indicated the testing is roughly 24 hours. He mentioned that the examination portion has four questions only on HGN. Is that what the evidence in this case shows? Yes. And can an officer be certified to do HGN testing and fail those four questions? Well, yes. That's what I heard Mr. Ramsell say. That's theoretically possible, but the training is not just take a test and you're certified. The training in Illinois is also administering the test to subjects who have been dosed up with a sufficient amount of alcohol to provide a backdrop against which to measure the officer's administration of the test. So it's not simply taking a test and you're certified. You have to show to the instructor's satisfaction that you know how to administer the test. One of the other issues defense counsel touched on is that the trial court failed to find that the HGN test can be used to prove impairment. And that's incorrect. Can the officer show how to administer the test? It's impossible for the instructor to know what's going on in his mental process in reading the signs that he's seeing, to know what's going on in the test subject. You said that the instructor would have him administer the test. What can the instructor learn by watching him administer the test? The instructor can learn if the officer is following the three-step protocol. Is the officer doing the pre-testing phases where they're checking the subject's eye movements for equal tracking movements and the presence of resting nystagmus? Is the officer holding the stimulus at the correct distance? Is the officer measuring the 45-degree angle that's used at the third phase of the HGN test correctly? Is the instructor also evaluating the same thing the officer is evaluating? Then I'm done. I think the training officer would just be focusing on the officer's ability to administer the test and what clues did the officer detect, and that would be used to match against the BAC level that the training officer would know based on the BAC reading that would be used to measure did the officer administer the test correctly. With regard to forfeiture, since the defendant did object to the evidence based upon no FRI hearing, can an argument be made that reliance on that argument is sufficient to include whether or not the officer complied with any standards? Because until we sent it back for the FRI hearing, and since we indicated that we required a FRI hearing, the testimony is not admissible. Therefore, there were no standards until Judge Brandt's order that we're reviewing now. No, that's not a sufficient basis to preserve the claim at issue, and that fact was recognized not only by the trial court at the original trial, who said, well, I'm going to admit the evidence. I'm not going to require a FRI hearing, but I recognize that it's an open question whether, if the test itself is generally accepted, whether a particular application of the test was administered correctly. And I point, Your Honor, to this Court's decision in McCown 1. One of the cases you discussed there is Peeble v. Bunning, which is a 5th District Appellate Court case from 1992. And even at that point, the Appellate Court was setting forth a standard for a proper foundation for the HGN test. So it goes to show that the defendant's objection to the specific administration in this case is not dependent on the evidence developed at the FRI hearing. And I'd like to turn back quickly to Justice Freeman's questions regarding the training in Illinois, the particular administration of the HGN test. Has this Court recognized in Donovan? I think you had said it before. Is your rationale behind, in response to Justice Carmer's question, that an objection to FRI is not enough to an objection to the specifics in this case? Is the reason for that, is the rationale behind that, that if there was an objection there, the officer might, a testimony could be elicited that could substantiate the foundation? That's exactly right. This Court's decision in People v. Bush makes that same point, that the failure to object to foundation deprives the people of the opportunity to cure any error in the foundation. And to turn back to my comments, what I was going to say is that Your Honor's questions about training and the particular application of the HGN test in a given case, this Court recognized that, in Donaldson, that a particular application of a generally accepted method goes to the weight of the evidence, not its admissibility. In this case, the admissibility of the HGN test turns on whether experts in the relevant fields reasonably rely on the HGN test. And the overwhelming weight of the evidence is that they do. Optometrists, ophthalmologists, and physicians rely on a materially indistinguishable version of the HGN test in their clinical practices. Experts in all three fields testify that in examining their patients, they'll be observing the patient's eye movements for nystagmus, the lack of smooth pursuit movements, which is the first phase of the test. Counsel, if I may, was it the finding of most or all the experts in this case that the police officer here did not meet those standards that you're now discussing? Yes, ultimately, all the witnesses did testify to that. And if I might, I'd like to cite, Your Honor, to pages 380 and 381 of the record, where Dr. Cytek testified that there were certain aspects of the test were omitted in the officer's description. And also to pages 670 and 672, where defense expert Dr. Henson testified that, well, Deputy Klatt didn't use the correct terminology, and he doesn't say he observed nystagmus prior to 45 degrees. And that's important because, to go to what Justice Thomas was asking, that had there been a contemporaneous objection at trial, the people may have been able to elicit information showing that the test was administered in accordance with the NHTSA protocols. What about a remand? What about a remand to have a hearing on foundation? People's position is that the claim is forfeited from a failure to object at the trial. I would just rest on that answer. Is it your position that the relevant scientific field is medicine? Or is it ophthalmology? Or is it forensic medicine? The circuit court here determined that the relevant fields were ophthalmology and optometry, and though he didn't make the explicit finding, general medicine is also a relevant field. If the court considers Dr. Zuck's testimony, he's the general physician who practiced at the Los Angeles County Jail for seven years, and it was incumbent upon him in that role to identify in the admittees to the jail whether those individuals were under the influence of alcohol. And he testified that the HGN test was a linchpin of those medical evaluations he was performing. Is there a difference between the way it's performed in medicine and the way it's performed by the police? Not by the method used by Dr. Zuck. I mean from the evidence that we have in this case. There's evidence that the test used by Dr. Zuck, the general physician, is indistinguishable from the HGN test used by law enforcement. The test used by the optometrists and the ophthalmologists have additional steps that the police officers don't administer, but the three primary components of the HGN test are relied upon by optometrists and ophthalmologists. As Dr. Citron testified, that's the defense ophthalmologist expert. He's administered thousands of those tests. He administers them to every new patient he sees, on every annual exam he gives, and also he testified that, as a matter of course, neurologists and emergency room practitioners rely on the HGN test as well. Was there any expert that testified that it is relevant to alcohol impairment, not just alcohol consumption? Yes, I was just going to turn to that point. All the experts testified, Dr. Citron and Dr. Zuck testified that a failed HGN test result indicates central nervous system impairment. They both also testified that one explanation for the failed result is the consumption of alcohol. Further, there's additional testimony by the experts that if you fail the HGN test, you're statistically more likely to have a blood alcohol content of .08 or above, and indeed the trial court found in its opinion at page A66 of the defendant's appendix that it's axiomatic that a failed HGN test result, which suggests an excessively high blood alcohol content, indicates alcohol impairment. For that reason, because the test is generally accepted by experts in the relevant field to identify central nervous system impairment, and because the experts agree that the HGN test results can be caused by alcohol, the circuit court correctly held that the HGN test is generally accepted. And we ask that your honors hold that much and allow the people to introduce evidence of the HGN test on the question of whether someone is under the influence of alcohol. Thank you, counsel. Judge Brandt didn't make that finding, though, did he? On page 70 of the appendix that you just referenced, item 4 of his finding says there should be no attempt to correlate the test results with any particular blood alcohol level or range or level of intoxication. He did make that finding, but in the previous sentence he notes that the failed HGN test results suggests that the subject has consumed alcohol and may be under the influence of alcohol. And again, that goes to the reasonably limited use that people seek to make of the HGN evidence. That it's one factor among Counsel, I want to test, I know you mean that, but I wonder if it would work out that way. If they offer, in this case, results of the HGN test, they are going to be offering evidence of impairment. Yeah, that's correct. And you would have apparently proved that by offering the test that you say is going to be given only a limited range. It sounds like a little more than limited to me. It's limited in the sense that it's hypothetical situation would be if the HGN test is the only evidence of impairment in a given case. And I think the facts of the defendant's trial prove that. Are there no other questions? Thank you very much. Good morning, justices. My name is Ed Maloney. Counsel, may I please have the court. I think we have to recognize here, again, this was the most extensive trial hearing ever held. The state is testing to look at Arizona versus Blake. In Arizona versus Blake, three police officers testified, and Marcellina Burns. There was no evidence presented by the defendant. You go through all the cases listed in column one, and almost every one of them, there was no evidence presented by the defendant challenging the general acceptance of the HGN test. This is the first time it's been done. So I think we can disregard those other cases that have held reliability of the HGN test, because there were no FRI hearings on those. Now, I want to address the forfeiture issue, because this seems to be a big question. The forfeiture issue does not apply here. The case was sent back for a remand to test for a FRI hearing. A FRI hearing, according to column one, challenges the science behind the HGN test and the methodology used. So if we're challenging the methodology used, it encompasses challenging the way the officer did it, the foundation for him to have the opinion, how he did the test. So it was not forfeited. By sending it back, you're asking the court in the FRI hearing to determine, was the test done properly? So there was no forfeiture issue on that, I believe. But what about the position of the State that the forfeiture occurs at the time the officer is on the stand in the trial court without making an objection as to the foundation of that officer? He doesn't have the invited error, so to speak. He doesn't have the opportunity to try to lay a more sufficient foundation without the objection. Well, I think, Justice, that when he made the FRI hearing, it was our argument that it encompasses everything regarding that testimony from Officer Klatt and as to how the test was done and his ability to profess how he did the test. You would agree it would have been a little bit easier to preserve the issue by arguing that not only doesn't FRI apply, but even if FRI applies, this officer doesn't have the qualifications to testify regarding HGM. Yes. Because now we have to discuss whether it's forfeited, waived, whether there's a remand, not a remand. I understand your position, but I wanted to make sure you addressed the fact that the forfeiture that they're saying occurred, all the way back at the trial. Right, and my position is by requesting the FRI hearing, it encompasses the methodology used, which I want to get into both of those points. Is the methodology specific to how it was administered in this case, or are we talking about the broader question of methodology being the scientific principles that would lead one to believe that this test tells you something? It's both. It's how it was done in this case, and we have all the experts that testified that said Officer Klatt did it incorrectly. I disagree with the Attorney General's position. Sergeant O'Brien said Officer Klatt did the test incorrectly. He just didn't mention a few names or procedures he was supposed to have done. He said he did the test incorrectly. And so in this case it applies, but generally it applies across the board. It seems to me the first question this Court has to answer is the question of whether it, I mean we're not talking about having a case-by-case determination of whether under FRI the HGM test ought to be admissible. We're talking about as a matter of law should HGM be admissible, and that has to be premised upon the fact that if it's, it has to be, assuming it is correctly administered, is it scientifically reliable? That's the first question that has to be asked. And if it isn't, it doesn't make any difference because then it doesn't come in because it's junk science. That's the first question we have to be addressed. Is the science there? And so look at the science that was presented in the FRI hearing. We have an ophthalmologist who has developed his own test that he disagrees with the creator of the test, Marcellina Burns. She says nystagmus does not cause driving impairment. This optometrist from Oregon who testifies around the country and gets police accolades and awards in his own state who has some vested interest in keeping this HGM test alive, he says, oh, the creator of the test is wrong. I did my own test. No scientific basis for it that says it goes beyond what she even says. And he even agrees, though, that among the field of optometry, there is a disagreement among optometrists as to the validity of this test. Dr. Rubens, who testified for the defendant, said he could only find three articles written by optometrists regarding HGM testing. This resolution done by the American Optometric Association, Dr. Sytek could offer no information as to whether or not there was any research or data done on that, any debate. Was it taken over lunch? Like everybody who agrees raised their hand and no one said anything. So I think that really, and Judge Brandt relied on that to a great extent. Dr. Zook testified as to his limited experience with the HGM test. And he even said, though, that an ophthalmologist is more qualified than he is. So there's the scientific evidence you have on their side. What do we have on the defense side? An ophthalmologist who testifies that he could not give an opinion based upon an HGM test that a person was impaired. Additional testing needs to be done. If we could put an ophthalmologist in a police car like a drug-sniffing dog and have him go out to this field and do an HGM test, and according to Dr. Citron, I can't tell you as an ophthalmologist with years of training and experience as a surgeon that the HGM I am observing is caused by alcohol. That's what Dr. Citron said. Dr. Rubenzer said the technical writings also do not support the science proposed by Dr. Sytek and Dr. Zook. The literature, the technical writings say there's too much of a dichotomy, as was pointed out in Column 1, among the research on this issue, to really say the HGM test is a valid indicator of alcohol impairment or even consumption to some point. So the science is on our side. The methodology that's being used here then is the next point. Mr. Maloney, are you taking the position that the Frye test in this case proved to be faulty and should not be held out to allow the induction of the evidence of the HGM test? Yes, sir. We feel that the Frye hearing shows that the HGM test is not generally accepted in the fields, the community in which it's supposed to be accepted, that it is not generally accepted enough to pass the Frye test. The state's evidence was limited to an optometrist, and Dr. Zook, our defense evidence went way beyond that. As I say in my brief, we have a mountain of evidence saying HGM test is too subjective versus the molehill of evidence presented by the state in support of the scientific evidence or value behind it. As Mr. Ramsell said, all these medical doctors testified. There's a lot of different reasons that can cause nystagmus. Alcohol is only one of them, and officers are trained at it. Now we go to the methodology then, and here's where I have a really big problem with this. The only person that can testify the eyes were bouncing is the police officer. We have videos now that show people driving erratically or doing field sobriety tests, and a jury can look at a video and determine if the person is actually showing signs of impairment. You can bring in witnesses and say I was at the bar or party with him, and the person only had two or three drinks. I was in the scene, I was the passenger in the car, he was not driving erratically. These are all things that a jury can listen to and determine which way to give that evidence. Only the officer says the eyes were bouncing, and it's a scientific test, and the jury puts too much weight on that. The prejudicial effect of that outweighs the probative value. So you cross-examine the officer. Did you do it right? Well, they're going to say they did it right, like Officer Klatt said. Of course I did it right. You think I'm going to say now I did it wrong? Of course I did it right, and I observed nystagmus. Who else is going to come in and refute that? Nobody can say the eyes weren't bouncing. You can't have a doctor come in and say he did it wrong. We have Sergeant LeBron that says I trained these people how to do it. Later I look at videos of DUIRS, and they're doing the test wrong. We have Dr. Hanson who said he's reviewed over 500 or 300 videos. Only one out of 100 of the police officers is doing the test correctly. But they'll all come into court and say they did it right. And without a video, who's going to contradict them? Who's going to be able to get up and say, did you pass it four times? Did you hold it out to the end for four seconds like you're supposed to? The officer is going to say you did it correctly. And that's the problem with the test. It places too much weight on the officer's testimony that he convinces the jury, I saw the bouncing, and the bouncing means drinking, and the drinking means impairment. And that's the problem we feel is with the methodology used for the test. The other points, and I think, you know, we mentioned that this is the modern-day lie detector test. I almost think it's more like a rolling of bones test where someone rolls bones in the sand to determine a person's guilt or innocence, and only one person can determine what the bones say and how to read the bones. Well, the police officer here is the person who's reading the bones, saying the eyes bouncing mean you're intoxicated. In the past, I know that in doing research for this, the ancient Chinese had a test, a scientific test that they used where they would put rice in a person's mouth, and under the belief that if a person was lying, they would not be able to generate enough saliva in their mouth to be able to talk. And so that sort of person was lying. That was a scientific test then. This is the same thing. This is junk science. It should not be admitted in evidence. It confuses the juries too much. Since this Court's ruling two years ago, there's been no dearth of cases. People are still getting arrested for DUIs. People are still being found guilty of DUIs. The only difference may be is that the people that maybe were not actually guilty of the offense have now been convicted because this HGN evidence was not admitted in their cases, and that the state had to go on other evidence, which... I'm sorry, sir. Oh, I didn't see the light. Pardon me. Thank you. I apologize. Thank you, counsel. Case number 102-372 will be taken under advisement as a...